**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ELBA REYNOSO, | |
| Plaintiff, | Civil Action No.: 19-CIV-151 (LGS) |
| - against - | |
| BARRY LEVINE and FEDERAL EXPRESS CORPORATION, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION *IN LIMINE* TO PRECLUDE EXPERT OPINION AND TESTIMONY OF LIFE CARE PLANNER, HAROLD BIALSKY, D.C., M.A., CRC, CLCP**

KMA ZUCKERT LLC
Attorneys for Defendants
Federal Express Corporation and
Barry Levine
1350 Broadway, Suite 2410
New York, New York 10018
(212) 922-0450

Of Counsel:
Anthony W. Eckert III
Jennifer Huang

## PRELIMINARY STATEMENT

Defendants, Barry Levine and Federal Express Corporation, hereby submit the within Motion *In Limine* to Preclude Plaintiff's Life Care Planning Expert, Harold Bialsky, D.C., M.A., CRC, CLCP, from offering expert opinion and testimony at the time of trial. Plaintiff seeks to rely on Dr. Bialsky's opinions to support a claim for future medical care and expenses, where there is no evidentiary support or foundation for such opinions. A true and correct copy of Dr. Bialsky's report disclosed pursuant to Fed.R.Civ.P. 26(a)(2)(B) is annexed hereto as Exhibit "A". In fact, the need for future medical care is expressly refuted by Plaintiff's own medical experts who have, *inter alia*, discharged Plaintiff from their care, and testified and documented that Plaintiff does not require any such additional medical care. Therefore, Dr. Bialsky's opinions are unsupported by any medical or other evidence, rendering his opinions speculative and lacking in reliability or relevance to meet the evidentiary standards for admissibility and should be precluded.

## STATEMENT OF RELEVANT FACTS

This is a personal injury action in which Plaintiff allegedly sustained injuries to her right knee, left shoulder and cervical spine. Plaintiff underwent arthroscopic surgeries to the right knee on April 20, 2018 and left shoulder on May 14, 2018, performed by Plaintiff's orthopedic surgery expert, Napoleon Valdez, M.D., as well as, a one-level cervical fusion and discectomy surgery to the C6-C7 level on March 15, 2019, performed by Plaintiff's neurosurgery expert, Paul Ratzker, M.D. As discussed in greater detail below, both medical experts were deposed and their testimony, reports and records confirm that Plaintiff is not in need of any such future medical care. Accordingly, Dr. Bialsky's opinions and any testimony regarding the need for future medical care and costs, lack reliability and relevance and should be precluded in their entirety.

## STANDARD OF LAW

Rules 702 and 703 of the Federal Rules of Evidence govern the admissibility of expert opinion and testimony.  Plaintiff shoulders the burden of establishing by a preponderance of the evidence that the requirements of Fed.R.Evid. 702, as interpreted by *Daubert,* are satisfied. *See U.S. v. Williams,* 506 F.3d 151, 160 (2d Cir.2007) (citing *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 593 n. 10 (1993)).  To ensure that proffered expert testimony rests upon a reliable foundation and is relevant, the trial court performs a gatekeeping role. *Daubert* 509 U.S. at 579-80. While the test set out in *Daubert* is flexible, the "court must [nevertheless] focus on the principles and methodology employed by the expert, without regard to the conclusions the expert has reached or the district court's belief as to the correctness of those conclusions." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 266 (2d Cir. 2002).

Further, under New York law, it is well established that economic damages (such as future medical expenses) must be established with "reasonable certainty." *See, e.g.,  Huff v. Rodriguez,* 45 A.D.3d 1430, 1433 (4th Dep't 2007); *Pouso v. City of New York,* 22 A.D.3d 395, 397 (1st Dep't 2005); *Tassone v. Mid-Valley Oil Co., Inc.*, 5 A.D.3d 931, 932 (3d Dep't 2004).  Pursuant to this standard, "an award for future medical expenses may not be based upon mere speculation." *Faas v. State*, 249 A.D.2d 731, 732 (3d Dep't 1998); *see also Fiederlein v. N.Y. City Health & Hosp. Corp.*, 56 N.Y.2d 573, 574 (N.Y. 1982) ("Mere conjecture, surmise or speculation is not enough to sustain a claim for damages.").

Thus, consistent with the Court's role as a gatekeeper, the Court should exclude expert evidence if it is "speculative or conjectural or if it is based on assumptions that are so unrealistic and contradictory as to suggest bad faith or to be in essence an apples and oranges comparison." *Boucher v. U.S. Suzuki Motor Corp.,* 73 F.3d 18, 21 (2d Cir.1996) (internal citations and quotations omitted); *Degleman Indus. Ltd v. Pro–Tech Welding & Fabrication,*

2

*Inc.,* 2011 WL 6754051, *2 (W.D.N.Y.) ("[w]hen an expert witness relies upon invalid assumptions or demonstrates a lack of inquiry into the relevant facts, the expert witness' testimony will be precluded")(internal citations omitted).

## ARGUMENT

### Dr. Bialsky's Opinions Lack Any Medical Support and Do Not Meet Evidentiary Standards for Admissibility

Dr. Bialsky's Life Care Plan provides the need for future medical care and costs associated with follow up visits with Plaintiff's orthopedic and neurosurgeons, radiographic studies, including x-rays, MRIs/CT scans of her cervical spine, shoulder and knee, as well as physical therapy over the course of the next 41 years. *See* Exhibit "A". In regard to Plaintiff's right knee and left shoulder, Plaintiff's last documented visit with her orthopedic surgeon, Napoleon Valdez, M.D., was on October 29, 2019, when Plaintiff visited Dr. Valdez in connection with his provision of a narrative report disclosed pursuant to Fed.R.Civ.P. 26(a)(2)(B), a true and correct copy of which is annexed hereto as Exhibit "B". Dr. Valdez was questioned extensively with respect to this October 29, 2019 report at his deposition conducted on May 12, 2020, a true and correct copy of which is annexed hereto as Exhibit "C". Dr. Valdez confirmed that after this October 29, 2019 visit, Plaintiff did not require a follow up visit with him and had no current appointments to see him. *See* Exhibit C at 132:21-25, 133:2-14. Dr. Valdez also confirmed that Plaintiff did not require any follow-up x-rays or MRIs. *See* Exhibit C at 133:21-25, 134:2-17.

Dr. Valdez also testified that while he mentioned in his October 29, 2019 report it is common for patients to develop premature onset of degenerative arthritis, which could require further surgery, he clarified that this statement was based on the medical literature, but that he did not believe Plaintiff actually requires further surgery. *See* Exhibit C at 129:14-25, 130:2-22. Plaintiff also is not currently attending physical therapy and there is no indication that she requires

3

additional physical therapy for her left shoulder or right knee. *See* Exhibit C at 135-138. Thus, the future medical care suggested by Dr. Bialsky and the 41-year time frame for such care is completely arbitrary and lacks any evidentiary support or foundation to fulfill this Court's gatekeeping role in assuring that the standards of Rules 401 and 702 are met under *Daubert*.

With respect to the cervical spine, Plaintiff's neurosurgeon, Paul Ratzker, M.D., provided a narrative report dated October 28, 2019, disclosed pursuant to Fed.R.Civ.P. 26(a)(2)(B), a true and correct copy of which is annexed hereto as Exhibit "D". According to Dr. Ratzker's October 28, 2019 report, the last time he saw Plaintiff before drafting that report was on August 16, 2019, at which time Plaintiff had "relatively mild complaint, doing well, some stiffness in cervical spine." *See* Exhibit D, p. 2. Based on that exam, Dr. Ratzker discharged Plaintiff from physical therapy as of August 16, 2019. *See* Exhibit D, p. 3. Dr. Ratzker provided deposition testimony on May 15, 2020, a true and correct copy of which is attached hereto as Exhibit "E", and again confirmed that Plaintiff was discharged from physical therapy as of August 16, 2019. *See* Exhibit E, 57:3-9. Dr. Ratzker testified that Plaintiff had a follow up appointment to see him in March 2020, but the appointment did not occur due to the COVID-19 health restrictions in place at that time, however, this would have been Plaintiff's last appointment with him. *See* Exhibit E, 72:9-18 and 81:5-11. Dr. Ratzker also testified that he would not send a patient for additional x-rays or MRIs when she has been discharged from his care. *See* Exhibit E, 81:5-16. As Plaintiff was unable to see Dr. Ratzker for her last appointment in March, Plaintiff saw Dr. Ratzker on June 19, 2020, a true and correct copy of this record is annexed hereto as Exhibit "F". In the report of this visit, and consistent with his deposition testimony, Dr. Ratzker concludes that Plaintiff "does not require any ongoing clinical or radiographic follow up." *See* Exhibit F. Thus, Dr. Bialsky's opinion that Plaintiff requires additional appointments to see Dr. Ratzker or any other medical care

providers for follow up visits, radiographic studies and physical therapy for the next 41 years is completely baseless and lacks any reliability whatsoever.

Similarly, in regard to Dr. Bialsky's recommendation for future cervical spine fusion revision surgery, under reasonable life care planning criteria, only items/procedures that have over a 50% probability should be included in the overall recommendations with researched costs. In addition, New York courts have shown a clear disinclination to award damages when the actual need for surgery is unknown or indefinite. *See, e.g., Hernandez v. New York City Transit Auth.*, 52 A.D.3d 367, 369 (1st Dep't 2008) (holding that jury's award of $30,000 for ankle operation within five years was speculative when plaintiff's witness did not say plaintiff needed such surgery in that timeframe); *Stylianou v. Calabrese*, 297 A.D.2d 798, 799 (2d Dep't 2002) (setting aside award of damages for future surgery where "plaintiff's physician failed to state a basis" for his opinion that plaintiff would require such surgery); *Faas*, 249 A.D.2d at 732 (affirming lower court's decision not to award damages for future shoulder surgery when claimant's orthopedic surgeon "failed to offer a definite opinion with regard to the need for surgery").

Here, there is no support in any of Plaintiff's records that cervical spine revision surgery is a probability. In fact, Dr. Ratzker testified that while Plaintiff may be at an increased risk for adjacent segment syndrome requiring surgery, only approximately 15% out of 600 patients for whom Dr. Ratzker has performed a one-level fusion have required such additional surgery. *See* Exhibit E, 67:19-25. Dr. Ratzker also testified that the need for such additional surgery depends on the person, but typically, it takes more than 5 years, but is more in the range of 5 to 15 years to manifest itself, if it ever does. *See* Exhibit E, p. 68.

Based upon the foregoing, Dr. Bialsky's recommendations are speculative, not relevant and are unreliable, and his opinions and testimony should be precluded.

Dated:  November 4, 2020
       New York, New York

                                   Respectfully submitted,

                                   KMA ZUCKERT LLC

By: _____
                                   Anthony W. Eckert III, Esq.
                                   Jennifer Huang, Esq.
                                   1350 Broadway, Suite 2410
                                   New York, New York 10018
                                   (212) 922-0450

                                   Attorneys for Defendants
                                   Barry Levine and Federal Express Corp.